UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF FLORIDA

CASE NO. 13-60272-CIV-COHN/SELTZER

ABERCROMBIE & FITCH TRADING CO.,

Plaintiff,

v.

007FASHION.COM, et al.,

Defendants.
_______________________________/

**ORDER GRANTING *EX PARTE* APPLICATION FOR ENTRY OF TEMPORARY RESTRAINING ORDER AND SETTING HEARING ON MOTION FOR PRELIMINARY INJUNCTION**

**THIS CAUSE** is before the Court on Plaintiff's *Ex Parte* Application for Entry of Temporary Restraining Order, Preliminary Injunction, and Order Restraining Transfer of Assets Tied to the Counterfeiting Operation [DE 5] ("Application for Temporary Restraining Order"). The Court has carefully considered the Application for Temporary Restraining Order and is otherwise advised in the premises.

Plaintiff Abercrombie & Fitch Trading Co. ("Plaintiff") moves *ex parte*, pursuant to 15 U.S.C. § 1116 and Fed. R. Civ. P. 65, for entry of a temporary restraining order and an order restraining the financial accounts used by Defendants,[1] and upon expiration of the temporary restraining order, a preliminary injunction against Defendants, for alleged violations of the Lanham Act, 15 U.S.C. §§ 1114, 1125(a).

---

[1] Defendants are the Partnerships and Unincorporated Associations identified on Schedule "A" hereto.

## I. Factual Background[2]

1. Plaintiff is the registered owner of the following trademarks, which are valid and registered on the Principal Register of the United States Patent and Trademark Office (the "Abercrombie Marks"):

| Trademark | Registration Number | Registration Date | Class / Goods |
|---|---|---|---|
| ABERCROMBIE & FITCH | 0,951,410 | January 23, 1973 | IC 025 - men's and women's clothing and footwear- namely pants, shirts, skirts, jackets, coats, gloves, mittens, hats, underwear, shoes, belts, caps. |
| abercrombie | 2,305,464 | January 4, 2000 | IC 025 - Clothing, namely, coats, jackets, knit shirts, woven shirts, t-shirts, shirts, underwear, pants, jeans, hats and shoes.<br>IC 035 - Retail clothing store services |
| ABERCROMBIE & FITCH | 2,500,146 | October 23, 2001 | IC 003 - personal care products, namely, perfume.<br>IC 014 - jewelry, namely, necklaces and bracelets.<br>IC 018 - handbags, tote bags and travel bags.<br>IC 025 - clothing, namely, t-shirts, sweatshirts, sweatpants, jeans, sandals, visors, tank tops, swimwear, bikinis and camisoles. |

[2] The Court bases this Order on the following facts from Plaintiff's Complaint, Application for Temporary Restraining Order, and supporting evidentiary submissions.

| Trademark | Registration Number | Registration Date | Class / Goods |
|---|---|---|---|
| A & F | 2,530,664 | January 15, 2002 | IC 025 - clothing, namely, hats, caps, shirts, t-shirts, tank tops, knit tops, woven tops, halter tops, sweatshirts, sweatpants, underwear, boxer shorts, pants, short pants, jeans, skirts, footwear, sweaters, vests, coats, jackets, scarves.<br>IC 035 - retail personal care product and clothing store services and mail order catalog services featuring personal care products and clothing. |
|  | 3,212,644 | February 27, 2007 | IC 025 - clothing, namely, polo shirts, sweaters, t-shirts, shirts, knit tops, woven tops, sweatshirts, sweatpants, pants, shorts, caps, hats, scarves, jackets, coats, sandals, flip flops, belts, tank tops, underwear, boxer shorts, swim suits, pajamas, sleepwear.<br>IC 035 - retail store services, and on-line retail store services featuring clothing, footwear, fashion accessories, fragrances and jewelry. |
| HOLLISTER | 3,310,650 | October 16, 2007 | IC 025 - belts; blouses; boxer shorts; camisoles; caps; coats; footwear; halter tops; hats; jackets; jeans; knit shirts; loungewear; pants; sandals; scarves; shirts; shoes; shorts; skirts; sweat pants; sweat shirts; sweat shorts; sweaters; swim wear; t-shirts; tank tops; underpants; undershirts; underwear. |

| Trademark | Registration Number | Registration Date | Class / Goods |
|---|---|---|---|
| ABERCROMBIE | 3,484,799 | August 12, 2008 | IC 025 - coats; jackets; knit shirts; shirts; t-shirts; underwear; pants; jeans; hats; shoes. |
| HCO | 3,529,071 | November 4, 2008 | IC 025 - clothing, namely, boxer shorts, caps, coats, hats, jackets, knit shirts, knit tops, loungewear, pants, shirts, slacks, sweat pants, sweat shirts, t-shirts and underwear.<br>IC 035 - retail store services and on-line retail services featuring clothing. |

See Declaration of Brandon Scott in Support of Plaintiff's Application for Temporary Restraining Order ["Scott Decl."] ¶ 4; see also United States Trademark Registrations of the Abercrombie Marks at issue attached as Composite Exhibit A to the Declaration of Brandon Scott in Support of Plaintiff's Application for Temporary Restraining Order. The Abercrombie Marks are used in connection with the manufacture and distribution of, among other things, clothing, namely t-shirts, polo shirts, sweat shirts, sweaters, sweat pants, underwear, shorts, jeans, vests, jackets, tote bags, and caps. See Scott Decl. ¶ 4.

2. Defendants, through the Internet websites operating under the domain names identified on Schedule "A" hereto (the "Subject Domain Names"), have advertised, promoted, offered for sale, and/or sold, at least, clothing, namely t-shirts, polo shirts, sweat shirts, sweaters, sweat pants, underwear, shorts, jeans, vests, jackets, tote bags, and caps bearing what Plaintiff has determined to be counterfeits, infringements, reproductions, and/or colorable imitations of the Abercrombie Marks.

See Scott Decl. ¶¶ 9-15; Declaration of Stephen M. Gaffigan in Support of Plaintiff's Application for Temporary Restraining Order ["Gaffigan Decl."] ¶ 3 and Composite Exhibit A to the Gaffigan Decl.; see also Composite Exhibit B to the Scott Decl.

3. Although each Defendant may not copy and infringe each Abercrombie Mark for each category of goods protected, Plaintiff has submitted sufficient evidence showing each Defendant has infringed, at least, one or more of the Abercrombie Marks. See Scott Decl. ¶¶ 11-15. Defendants are not now, nor have they ever been, authorized or licensed to use, reproduce, or make counterfeits, reproductions, and/or colorable imitations of the Abercrombie Marks. See id. ¶ 9.

4. Plaintiff retained Investigative Consultants, AED Investigations, Inc., and Aries Claims Services, all licensed private investigative firms, to investigate the sale of counterfeit versions of Plaintiff's products by Defendants. See Scott Decl. ¶ 10; Declaration of Eric Rosaler in Support of Plaintiff's Application for Temporary Restraining Order ["Rosaler Decl."] ¶ 3; Declaration of Kathleen Burns in Support of Plaintiff's Application for Temporary Restraining Order ["Burns Decl."] ¶ 3; Declaration of Sean Smith in Support of Plaintiff's Application for Temporary Restraining Order ["Smith Decl."] ¶ 3; Gaffigan Decl. ¶ 4.

5. Eric Rosaler, an officer of AED Investigations, Inc., accessed the Internet websites operating under the Subject Domain Names identified in the table below, and went through the purchasing process for various products, all of which bore counterfeits of at least one of the Abercrombie Marks at issue in this action.[3]

---

[3] Rosaler was instructed to not finalize his purchases via the Internet websites so as to avoid contributing additional funds to Defendants' coffers. See Gaffigan Decl. ¶ 4.

See Rosaler Decl. ¶¶ 6-16 and Exhibits A through N thereto. Following submission of his orders, Rosaler received information for finalizing payment for each of the items ordered via PayPal, Inc., ("PayPal") and/or bank transfer to Defendants' respective PayPal and/or bank accounts, as follows:

| Subject Domain Name | Payment Method | Account[4] |
|---|---|---|
| 007fashion.com | Bank Transfer | Account Owner: Linkun Wang;<br>Industrial and Commercial Bank of China, Shenzhen Branch;<br>SWIFT Code ICBKCNBJSZN;<br>Bank Account Number ***************9900 |
| brand-cap.com<br>shoes5a.com | Bank Transfer | Account Owner: Lai Hong Liang;<br>Bank of China, Putian Branch;<br>SWIFT Code BKCHCNBJ73A;<br>Bank Account Number ***************0436 |
| buykicksonline.com | PayPal | xyyyrz@163.com |
| chromeclothes.net<br>chromeclothes.com | Bank Transfer | Account Owner: Mengjun Cheng;<br>China Construction Bank, Guangdong Branch;<br>SWIFT Code PCBCCNBJGDX;<br>Bank Account Number **** **** **** ***8 885 |
| clothes-supply.com | Bank Transfer | Account Owner: Hualiang Lu;<br>Bank of China;<br>SWIFT Code BKCHCNBJ400; Bank Account Number ***************3521 |
| eshoppinginchina.net<br>wholesalecube.com | Bank Transfer | Account Owner: Lin Zikai;<br>Bank of China, Xiamen Branch;<br>SWIFT Code KCHCNBJ73A;<br>Bank Account Number *******-****-***020-8 |
| hopev.com | Bank Transfer | Account Owner: GuoCong Liu;<br>Bank of China;<br>SWIFT Code BKCHCNBJ73C;<br>Bank Account Number ********4558 |
| jumpmanlocker.us | Bank Transfer | Account Owner: Huang Yanfei;<br>Bank of China;<br>SWIFT Code BKCHCNBJ73C;<br>Bank Account Number ********7337 |

[4] The full account numbers of all financial-institution accounts identified herein have been redacted to avoid disclosure of private financial information, in compliance with Fed. R. Civ. P. 5.2(a)(4).

| Subject Domain Name | Payment Method | Account[4] |
|---|---|---|
| nodus79.com | Bank Transfer | Account Owner: Su Zhaowei;<br>Bank of China Guangzhou Zhan Xi Road Sub-Branch;<br>SWIFT Code BKCHCNBJ400;<br>Bank Account Number *******-****-***066-7 |
| | Bank Transfer | Account Owner: Chen Shuyi;<br>Agricultural Bank of China;<br>SWIFT Code ABOCCNBJ190;<br>Bank Account Number ****** *********4717 |
| | PayPal | pjessiep@126.com |
| onlineunite.com | Bank Transfer | Account Owner: Shiwen Zhu;<br>China Merchants Bank, Guangzhou Subsidiary Bank;<br>SWIFT Code CMBCCNBS;<br>Bank Account Number **** **** **** 1023 |
| outletmallshop.com | Bank Transfer | Account Owner: Xiufen Yang;<br>China Merchants Bank;<br>SWIFT Code CMBCCNBS;<br>Bank Account Number ************3869 |
| | PayPal | outletkingdom@163.com |
| shopane.com | Bank Transfer | Account Owner: Wang Chaoying;<br>Bank of China;<br>SWIFT Code BKCHCNBJ45A;<br>Bank Account Number ***************2262 |

See Rosaler Decl. ¶¶ 6-16 and Exhibits A through N thereto.

6. Additionally, Kathleen Burns, a partner at Aries Claims Services, accessed the Internet websites operating under the Subject Domain Names listed below and went through the purchasing process for various products, all of which bore counterfeits of at least one of the Abercrombie Marks at issue in this action.[5] See Burns Decl. ¶¶ 4-6 and Exs. A through C thereto. Following the submission of her orders, Burns likewise received information for finalizing payment for each of the Abercrombie-branded items

[5] Burns intentionally did not finalize her purchases from the Internet websites operating under the Subject Domain Names so as to avoid contributing funds to Defendants' coffers.

ordered via PayPal and/or bank transfer to Defendants' respective PayPal and/or bank accounts, as follows:

| Subject Domain Name | Payment Method | Account |
|---|---|---|
| brand-pick.com | Bank Transfer | Account Owner: Lin Haixing;<br>Bank of China, Putian Branch;<br>SWIFT Code BKCHCNBJ73C;<br>Bank Account Number ***************9108 |
| canparka.com | Bank Transfer | Account Owner: Xiaoning Bai;<br>Bank of China;<br>SWIFT Code BKCHCNBJ42G;<br>Bank Account Number ***************8674 |
| clisshoes.com | PayPal | guranteehui@hotmail.com |

See Burns Decl. ¶¶ 4-6 and Exs. A through C thereto.

7. Moreover, Sean Smith, an employee of Investigative Consultants, placed an order for the purchase of (i) a t-shirt bearing at least one of the Abercrombie Marks at issue in this action through the Internet website operating under the Subject Domain Name chromeclothes.net; and (ii) a vest bearing at least one of the Abercrombie Marks at issue in this action through the Internet website operating under the Subject Domain Name outletmallshop.com, and he requested that each product be shipped to his address in the Southern District of Florida. See Smith Decl. ¶¶ 4-5. Following the submission of his orders, Smith exchanged e-mail correspondence with both Defendants, receiving information electronically to effect payment for the Abercrombie branded products he ordered via the chromeclothes.net and outletmallshop.com websites. Id. Smith submitted payment to finalize the purchase of the Abercrombie branded products he ordered, and subsequently sent detailed web page listings and web captures to Abercrombie's representative for review and analysis. Id.

8. Thereafter, Plaintiff's representative reviewed and visually inspected the web page listings, including images, for the items bearing Plaintiff's trademarks purchased by Smith and determined the items to be non-genuine versions of Plaintiff's products. See Scott Decl. ¶ 12. Additionally, Plaintiff's representative reviewed and visually inspected the items bearing Plaintiff's trademarks offered for sale through the Internet websites operating under the Subject Domain Names and determined the products to be unauthorized, non-genuine versions of Plaintiff's products. See id. ¶¶ 13-15.

## II. LEGAL STANDARD

To obtain a temporary restraining order, a party must demonstrate "(1) a substantial likelihood of success on the merits; (2) that irreparable injury will be suffered if the relief is not granted; (3) that the threatened injury outweighs the harm the relief would inflict on the non-movant; and (4) that entry of the relief would serve the public interest." Schiavo ex rel. Schindler v. Schiavo, 403 F.3d 1223, 1225-26 (11th Cir. 2005) (per curiam); see also Levi Strauss & Co. v. Sunrise Int'l Trading Inc., 51 F.3d 982, 985 (11th Cir. 1995) (applying this test to a preliminary injunction in a Lanham Act case). Additionally, a court may issue a temporary restraining order without notice to the adverse party or its attorney only if:

> **(A)** specific facts in an affidavit or a verified complaint clearly show that immediate and irreparable injury, loss, or damage will result to the movant before the adverse party can be heard in opposition; and
>
> **(B)** the movant's attorney certifies in writing any efforts made to give notice and the reasons why it should not be required.

Fed. R. Civ. P. 65(b)(1). *Ex parte* temporary restraining orders "should be restricted to serving their underlying purpose of preserving the status quo and preventing irreparable harm just so long as is necessary to hold a hearing, and no longer." Granny Goose Foods, Inc. v. Bhd. of Teamsters & Auto Truck Drivers Local No. 70 of Alameida Cnty., 415 U.S. 423, 439 (1974).

## III. ANALYSIS

The declarations Plaintiff has submitted in support of its Application for Temporary Restraining Order support the following conclusions of law:

A. Plaintiff has a very strong probability of proving at trial that consumers are likely to be confused by Defendants' advertisement, promotion, sale, offer for sale, and/or distribution of clothing, namely t-shirts, polo shirts, sweat shirts, sweaters, sweat pants, underwear, shorts, jeans, vests, jackets, tote bags, and caps bearing counterfeits, reproductions, and/or colorable imitations of the Abercrombie Marks, and that the products Defendants are selling and promoting are copies of Plaintiff's products that bear copies of the Abercrombie Marks on clothing, namely t-shirts, polo shirts, sweat shirts, sweaters, sweat pants, underwear, shorts, jeans, vests, jackets, tote bags, and caps.

B. Because of the infringement of the Abercrombie Marks, Plaintiff is likely to suffer immediate and irreparable injury if a temporary restraining order is not granted. It clearly appears from the following specific facts, as set forth in Plaintiff's Complaint, Application for Temporary Restraining Order, and accompanying declarations on file, that immediate and irreparable loss, damage, and injury will result to Plaintiff and to

consumers before Defendants can be heard in opposition unless Plaintiff's request for *ex parte* relief is granted:

1. Defendants own or control Internet website businesses which advertise, promote, offer for sale, and sell, at least clothing, namely t-shirts, polo shirts, sweat shirts, sweaters, sweat pants, underwear, shorts, jeans, vests, jackets, tote bags, and caps bearing counterfeit and infringing trademarks in violation of Plaintiff's rights;

2. There is good cause to believe that more counterfeit and infringing products bearing Plaintiff's trademarks will appear in the marketplace; that consumers are likely to be misled, confused, and disappointed by the quality of these products; and that Plaintiff may suffer loss of sales for its genuine products; and

3. There is good cause to believe that if Plaintiff proceeds with notice to Defendants on this Application for Temporary Restraining Order, Defendants can easily and quickly transfer the registrations for many of the Subject Domain Names, or modify registration data and content, change hosts, and redirect traffic to other websites, thereby thwarting Plaintiff's ability to obtain meaningful relief.

C. The balance of potential harm to Defendants in restraining their trade in counterfeit and infringing branded goods if a temporary restraining order is issued is far outweighed by the potential harm to Plaintiff, its reputation, and goodwill as a manufacturer and distributor of quality products, if such relief is not issued.

D. The public interest favors issuance of the temporary restraining order in order to protect Plaintiff's trademark interests and protect the public from being defrauded by the palming off of counterfeit goods as Plaintiff's genuine goods.

E. Under 15 U.S.C. § 1117(a), Plaintiff may be entitled to recover, as an equitable remedy, the illegal profits gained through Defendants' distribution and sales of clothing, namely t-shirts, polo shirts, sweat shirts, sweaters, sweat pants, underwear, shorts, jeans, vests, jackets, tote bags, caps, and socks bearing counterfeits and infringements of the Abercrombie Marks. See Reebok Int'l, Ltd. v. Marnatech Enters., Inc., 970 F.2d 552, 559 (9th Cir. 1992) ("An accounting of profits under § 1117(a) is not synonymous with an award of monetary damages: '[a]n accounting for profits . . . is an equitable remedy subject to the principles of equity.'" (quoting Fuller Brush Prods. Co. v. Fuller Brush Co., 299 F.2d 772, 777 (7th Cir. 1962))).

F. Requesting equitable relief "invokes the district court's inherent equitable powers to order preliminary relief, including an asset freeze, in order to assure the availability of permanent relief." Levi Strauss & Co. v. Sunrise Int'l Trading Inc., 51 F.3d 982, 987 (11th Cir. 1995) (citing Fed. Trade Comm'n v. United States Oil & Gas Corp., 748 F.2d 1431, 1433-34 (11th Cir. 1984)).

G. In light of the inherently deceptive nature of the counterfeiting business, and Defendants' blatant violation of the federal trademark laws, Plaintiff has good reason to believe Defendants will hide or transfer their ill-gotten assets beyond the jurisdiction of this Court unless those assets are restrained.

## IV. CONCLUSION

For the foregoing reasons, it is

**ORDERED AND ADJUDGED** that Plaintiff's Application for Temporary Restraining Order [DE 5] is hereby **GRANTED** as follows:

(1) Each Defendant, its officers, directors, employees, agents, subsidiaries, distributors, and all persons in active concert or participation with any Defendant having notice of this Order are hereby temporarily restrained:

a. From manufacturing, importing, advertising, promoting, offering to sell, selling, distributing, or transferring any products bearing the Abercrombie Marks, or any confusingly similar trademarks, other than those actually manufactured or distributed by Plaintiff; and

b. From secreting, concealing, destroying, selling off, transferring, or otherwise disposing of: (i) any products, not manufactured or distributed by Plaintiff, bearing the Abercrombie Marks, or any confusingly similar trademarks; or (ii) any evidence relating to the manufacture, importation, sale, offer for sale, distribution, or transfer of any products bearing the Abercrombie Marks, or any confusingly similar trademarks.

(2) Each Defendant, its officers, directors, employees, agents, subsidiaries, distributors, and all persons in active concert or participation with any Defendant having notice of this Order shall immediately discontinue the use of the Abercrombie Marks or any confusingly similar trademarks, on or in connection with all Internet websites owned and operated, or controlled by them including the Internet websites operating under the Subject Domain Names;

(3) Each Defendant, its officers, directors, employees, agents, subsidiaries, distributors, and all persons in active concert or participation with any Defendant having notice of this Order shall immediately discontinue the use of the Abercrombie Marks, or any confusingly similar trademarks within domain name extensions, metatags, or other markers within website source code, from use on any webpage (including as the title of any web page), from any advertising links to other websites, from search engines' databases or cache memory, and any other form of use of such terms which is visible to a computer user or serves to direct computer searches to websites registered by,

owned, or operated by each Defendant, including the Internet websites operating under the Subject Domain Names;

(4) Each Defendant shall not transfer ownership of the Subject Domain Names during the pendency of this action, or until further Order of the Court;

(5) The domain name Registrars for the Subject Domain Names are directed to transfer to Plaintiff's counsel, for deposit with this Court, domain name certificates for the Subject Domain Names;

(6) The domain name Registrars for the Subject Domain Names shall immediately assist in changing the Registrar of record for the Subject Domain Names, excepting any such domain names which such Registrars have been notified in writing by Plaintiff have been or will be dismissed from this action, to a holding account with a Registrar of Plaintiff's choosing (the "New Registrar"). To the extent the Registrars do not assist in changing the Registrars of Record for the domains under their respective control within one (1) business day of receipt of this Order, the top-level domain ("TLD") Registries (or their administrators) for the Subject Domain Names, within five (5) business days of receipt of this Order, shall change or assist in changing the Registrar of record for the Subject Domain Names, excepting any such domain names which such Registries have been notified in writing by Plaintiff have been or will be dismissed from this action, to a holding account with the New Registrar. As a matter of law, this Order shall no longer apply to any Defendant or associated domain name dismissed from this action. Upon the change of the Registrar of record for the Subject Domain Names, the New Registrar will maintain access to the Subject Domain Names in trust for the Court during the pendency of this action. Additionally, the New Registrar shall

immediately institute a temporary 302 domain name redirection which will automatically redirect any visitor to the Subject Domain Names to the following Uniform Resource Locator ("URL"), http://servingnotice.com/afpp3/index.html, whereon copies of the Complaint and all other documents on file in this action are displayed. Alternatively, the New Registrar may update the Domain Name System ("DNS") data it maintains for the Subject Domain Names, which link the domain names to the IP addresses where their associated websites are hosted, to NS1.MEDIATEMPLE.NET and NS2.MEDIATEMPLE.NET, which will cause the domain names to resolve to the website where copies of the Complaint, Temporary Restraining Order, and all other documents on file in this action are displayed. After the New Registrar has effected this change, the Subject Domain Names shall be placed on Lock status, preventing the modification or deletion of the domains by the New Registrar or Defendants;

(7) Upon Plaintiff's request, the privacy protection service for any of the Subject Domain Names for which the Registrant uses such privacy protection service to conceal the Registrant's identity and contact information is ordered to disclose to Plaintiff the true identities and contact information of those Registrants;

(8) Plaintiff may enter the Subject Domain Names into Google's Webmaster Tools and cancel any redirection of the domains that have been entered there by Defendants which redirect traffic to the counterfeit operations to a new domain name or website and thereby evade the provisions of this Order;

(9) Each Defendant shall preserve copies of all computer files relating to the use of any of the Subject Domain Names and shall take all steps necessary to retrieve

computer files relating to the use of the Subject Domain Names that may have been deleted before the entry of this Order;

(10) Upon receipt of notice of this Order, PayPal, Inc., ("PayPal")[6] and its related companies and affiliates shall immediately freeze all funds, as opposed to ongoing account activity, in or which hereafter are transmitted into the PayPal accounts related to the PayPal account recipients, xyyyrz@163.com, pjessiep@126.com, outletkingdom@163.com, and guranteehui@hotmail.com, as well as all funds in or which are transmitted into (i) any other related accounts of the same customer(s), (ii) any other accounts which transfer funds into the same financial institution account(s), and/or any of the other PayPal accounts subject to this Order; (iii) any other PayPal accounts tied to or used by any of the Subject Domain Names identified on Schedule "A" hereto; and (iv) any other PayPal accounts associated with or related to the domain names and/or e-mail addresses identified on Schedule "B" hereto;

(11) Upon receipt of notice of this Order, PayPal and its related companies and affiliates shall immediately freeze all funds, as opposed to ongoing account activity, in or which hereafter are transmitted into the PayPal accounts linked to, associated with, or that transmit funds into Defendants' identified bank accounts,[7] including but not limited to:

---

[6] PayPal is licensed to do business in the State of Florida by the Florida Office of the Controller and is therefore subject to personal jurisdiction in this Court. See Gaffigan Decl. ¶ 9 and Exhibit C attached thereto.

[7] The full account numbers have been redacted to avoid disclosure of private financial information, in compliance with Fed. R. Civ. P. 5.2(a)(4); however, the full account numbers are identified on Plaintiff's Notice of Filing Reference List, to be filed under seal, which shall be disclosed to PayPal to effectuate the relief ordered herein.

| Account |
|---|
| Account Owner: Linkun Wang;<br>Industrial and Commercial Bank of China, Shenzhen Branch;<br>SWIFT Code ICBKCNBJSZN;<br>Bank Account Number ***************9900 |
| Account Owner: Lai Hong Liang;<br>Bank of China, Putian Branch;<br>SWIFT Code BKCHCNBJ73A;<br>Bank Account Number ***************0436 |
| Account Owner: Mengjun Cheng;<br>China Construction Bank, Guangdong Branch;<br>SWIFT Code PCBCCNBJGDX;<br>Bank Account Number **** **** **** ***8 885 |
| Account Owner: Hualiang Lu;<br>Bank of China;<br>SWIFT Code BKCHCNBJ400;<br>Bank Account Number ***************3521 |
| Account Owner: Lin Zikai;<br>Bank of China, Xiamen Branch;<br>SWIFT Code KCHCNBJ73A;<br>Bank Account Number *******-****-***020-8 |
| Account Owner: GuoCong Liu;<br>Bank of China;<br>SWIFT Code BKCHCNBJ73C;<br>Bank Account Number ********4558 |
| Account Owner: Huang Yanfei;<br>Bank of China;<br>SWIFT Code BKCHCNBJ73C;<br>Bank Account Number ********7337 |
| Account Owner: Su Zhaowei;<br>Bank of China Guangzhou Zhan Xi Road Sub-Branch;<br>SWIFT Code BKCHCNBJ400;<br>Bank Account Number *******-****-***066-7 |
| Account Owner: Chen Shuyi;<br>Agricultural Bank of China;<br>SWIFT Code ABOCCNBJ190;<br>Bank Account Number ****** *********4717 |
| Account Owner: Shiwen Zhu;<br>China Merchants Bank, Guangzhou Subsidiary Bank;<br>SWIFT Code CMBCCNBS;<br>Bank Account Number **** **** **** 1023 |
| Account Owner: Xiufen Yang;<br>China Merchants Bank;<br>SWIFT Code CMBCCNBS;<br>Bank Account Number ************3869 |

| Account |
| --- |
| Account Owner: Wang Chaoying;<br>Bank of China;<br>SWIFT Code BKCHCNBJ45A;<br>Bank Account Number ***************2262 |
| Account Owner: Lin Haixing;<br>Bank of China, Putian Branch;<br>SWIFT Code BKCHCNBJ73C;<br>Bank Account Number ***************9108 |
| Account Owner: Xiaoning Bai;<br>Bank of China;<br>SWIFT Code BKCHCNBJ42G;<br>Bank Account Number ***************8674 |

and any other related accounts of the same customers;

(12) PayPal shall also immediately divert to a holding account for the trust of the Court all funds in all PayPal accounts related to the PayPal account recipients, xyyyrz@163.com, pjessiep@126.com, outletkingdom@163.com, and guranteehui@hotmail.com, and any other related accounts of the same customer(s) and/or all PayPal accounts linked to, associated with, or that transmit funds into Defendants' identified bank accounts, including but not limited to:

| Account |
| --- |
| Account Owner: Linkun Wang;<br>Industrial and Commercial Bank of China, Shenzhen Branch;<br>SWIFT Code ICBKCNBJSZN;<br>Bank Account Number ****************9900 |
| Account Owner: Lai Hong Liang;<br>Bank of China, Putian Branch;<br>SWIFT Code BKCHCNBJ73A;<br>Bank Account Number ***************0436 |
| Account Owner: Mengjun Cheng;<br>China Construction Bank, Guangdong Branch;<br>SWIFT Code PCBCCNBJGDX;<br>Bank Account Number **** **** **** ***8 885 |
| Account Owner: Hualiang Lu;<br>Bank of China;<br>SWIFT Code BKCHCNBJ400;<br>Bank Account Number ***************3521 |

| Account |
| --- |
| Account Owner: Lin Zikai;<br>Bank of China, Xiamen Branch;<br>SWIFT Code KCHCNBJ73A;<br>Bank Account Number *******-****-***020-8 |
| Account Owner: GuoCong Liu;<br>Bank of China;<br>SWIFT Code BKCHCNBJ73C;<br>Bank Account Number ********4558 |
| Account Owner: Huang Yanfei;<br>Bank of China;<br>SWIFT Code BKCHCNBJ73C;<br>Bank Account Number ********7337 |
| Account Owner: Su Zhaowei;<br>Bank of China Guangzhou Zhan Xi Road Sub-Branch;<br>SWIFT Code BKCHCNBJ400;<br>Bank Account Number *******-****-***066-7 |
| Account Owner: Chen Shuyi;<br>Agricultural Bank of China;<br>SWIFT Code ABOCCNBJ190;<br>Bank Account Number ****** *********4717 |
| Account Owner: Shiwen Zhu;<br>China Merchants Bank, Guangzhou Subsidiary Bank;<br>SWIFT Code CMBCCNBS;<br>Bank Account Number **** **** **** 1023 |
| Account Owner: Xiufen Yang;<br>China Merchants Bank;<br>SWIFT Code CMBCCNBS;<br>Bank Account Number ************3869 |
| Account Owner: Wang Chaoying;<br>Bank of China;<br>SWIFT Code BKCHCNBJ45A;<br>Bank Account Number ***************2262 |
| Account Owner: Lin Haixing;<br>Bank of China, Putian Branch;<br>SWIFT Code BKCHCNBJ73C;<br>Bank Account Number ***************9108 |
| Account Owner: Xiaoning Bai;<br>Bank of China;<br>SWIFT Code BKCHCNBJ42G;<br>Bank Account Number ***************8674 |

and any other related accounts of the same customers, as well as any other accounts which transfer funds into the same financial institution account(s) as any of the other PayPal accounts subject to this Order;

(13) PayPal shall further, within five business days of receiving this Order, provide Plaintiff's counsel with all data which details (i) an accounting of the total funds restrained and identifies the PayPal account(s) which the restrained funds are related to, and (ii) the account transactions related to all funds transmitted into the PayPal account(s) which have been restrained. Such restraining of the funds and the disclosure of the related financial institution account information shall be made without notice to the account owners or the financial institutions until further order of this Court. PayPal shall receive and maintain this Order and its contents as confidential until further Order of this Court;

(14) This Temporary Restraining Order shall remain in effect until the date for the hearing on the Motion for Preliminary Injunction set forth below, or until such further dates as set by the Court or stipulated to by the parties;

(15) Pursuant to 15 U.S.C. § 1116(d)(5)(D) and Fed. R. Civ. P. 65(c), Plaintiff shall post a bond in the amount of Ten Thousand Dollars and Zero Cents ($10,000.00), as payment of damages to which Defendants may be entitled for a wrongful injunction or restraint, during the pendency of this action, or until further Order of the Court. In the Court's discretion, the bond may be subject to increase should the amount of the funds seized exceed $10,000.00;

(16) After Plaintiff's counsel has received confirmation from PayPal regarding the funds frozen as directed herein, Plaintiff shall promptly serve a copy of the

Complaint, the Application for Temporary Restraining Order, this Order, and all other pleadings and documents on file in this action on each Defendant via the corresponding e-mail addresses provided by Defendants (i) as part of the domain registration data for each of their respective domain names, or (ii) on their Internet websites, and the customer service e-mail addresses used to communicate with Plaintiff's investigator, all of which are identified on Schedule "B" hereto, and provide a copy of the Order by e-mail to the Registrar of record for each of their respective domain names. In addition, Plaintiff shall post a copy of the Complaint, the Application for Temporary Restraining Order, and this Order, as well as all other documents filed in this action on the website located at http://servingnotice.com/afpp3/index.html, within forty-eight (48) hours of control of the Subject Domain Names being changed to the Court via the New Registrar's holding account, and such notice so given shall be deemed good and sufficient service thereof. Plaintiff shall continue to provide notice of these proceedings and copies of the documents on file in this matter to Defendants by regularly updating the website located at http://servingnotice.com/afpp3/index.html or by other means reasonably calculated to give notice which is permitted by the Court;

(17) A hearing is hereby **SET** for **February 21, 2013, at 9:00 a.m.,** in Courtroom 203E of the United States Courthouse, 299 East Broward Boulevard, Fort Lauderdale, Florida. At that hearing, Defendants and/or any other affected persons may challenge the appropriateness of this Order and move to dissolve the same, and the Court will hear argument on Plaintiff's Motion for Preliminary Injunction;

(18) By **February 13, 2013,** Defendants shall file with the Court and serve on Plaintiff's counsel any Response to Plaintiff's Motion for Preliminary Injunction. Plaintiff

shall file and serve any Reply by **February 14, 2013**. These dates may be revised upon stipulation by all parties and approval of the Court;

(19) By **noon on February 15, 2013,** Plaintiff and Defendants shall file Witness Lists identifying any witnesses that the parties expect to call at the preliminary-injunction hearing. At the option of the parties, direct testimony may be submitted in the form of written affidavits; however, all affiants will be subject to live cross examination at the hearing;

(20) **All Defendants are hereby notified that if they do not timely respond to Plaintiff's Motion for Preliminary Injunction and do not appear at the scheduled hearing, the Court may enter a preliminary injunction against them by default.**

**DONE AND ORDERED** in Chambers at Fort Lauderdale, Broward County, Florida, this 7th day of February, 2013, at 10:15 A.M..

JAMES I. COHN
UNITED STATES DISTRICT JUDGE

Copies provided to:

Counsel of record via CM/ECF

**SCHEDULE A**
**DEFENDANTS BY NUMBER AND SUBJECT DOMAIN NAME**

| Defendant Number | Defendant/Domain Name |
|---|---|
| 1 | 007fashion.com |
| 2 | brand-cap.com |
| 2 | shoes5a.com |
| 3 | brand-pick.com |
| 4 | buykicksonline.com |
| 5 | canparka.com |
| 6 | chromeclothes.net |
| 6 | chromeclothes.com |
| 7 | clisshoes.com |
| 8 | clothes-supply.com |
| 9 | eshoppinginchina.net |
| 9 | wholesalecube.com |
| 10 | hopev.com |
| 11 | jumpmanlocker.us |
| 12 | nodus79.com |
| 13 | onlineunite.com |
| 14 | outletmallshop.com |
| 15 | shopane.com |

**SCHEDULE "B"**
**DEFENDANTS BY SUBJECT DOMAIN NAME**
**AND ASSOCIATED E-MAIL ADDRESSES**

| Defendant Number | Defendant | E-Mail Address(es) |
|---|---|---|
| 1 | 007fashion.com | sales@g4brand.com<br>knl427@163.com |
| 2 | brand-cap.com<br>shoes5a.com | niceday8810@hotmail.com<br>domain@diyworld.com |
| 3 | brand-pick.com | pickbrand@yahoo.com<br>domain@diyworld.com |
| 4 | buykicksonline.com | buykicksonline@hotmail.com<br>43423276@qq.com |
| 5 | canparka.com | cantonike@hotmail.com<br>domain@diyworld.com |
| 6 | chromeclothes.net<br>chromeclothes.com | chromeclothes@yahoo.cn<br>chromeclothes@gmail.com<br>shatter_lam@163.com |
| 7 | clisshoes.com | wholesalecheaps@hotmail.com<br>domain@diyworld.com |
| 8 | clothes-supply.com | clothessupply2@gmail.com<br>clothes-supply@hotmail.com |
| 9 | eshoppinginchina.net<br>wholesalecube.com | kamewholesales@gmail.com<br>zkin2007@hotmail.com<br>contact@privacyprotect.org |
| 10 | hopev.com | poeon321@163.com |
| 11 | jumpmanlocker.us | jumpmanlocker@yahoo.com.cn<br>safasfasfa@afasfa.com |
| 12 | nodus79.com | nodus79_seller08@hotmail.com<br>marco-chen@126.com |
| 13 | onlineunite.com | 912136400@qq.com |
| 14 | outletmallshop.com | outletmallshop@163.com<br>363838034@qq.com |

| Defendant Number | Defendant | E-Mail Address(es) |
| --- | --- | --- |
| 15 | shopane.com | etopsell@yahoo.com |